Marshahd;
 
 Ck. J.
 

 after stating the facts of the case, delivered the opinion of the Court as follows:
 

 It has becu contended bv the Plaintiffs in error,
 

 
 *60
 
 i. That the Short Staple being a registered vessel, and having given bond as required by law for re-landing her cargo in the United States, is not liable to forfeiture, ii she has violated the condition of that bond.
 

 2. That her sailing to a foreign port, being under the coercion of a forcé she was unable to resist, is justifiable under the laws of the United States.
 

 The first error has been pressed with great eárnestness by the counsel for the Plaintiffs $ but the Court is not convinced that his exposition of the embargo acts is a sound one. On this point, however, it will be unnecessary to give,an
 
 opiniony
 
 because we think the ne-. cessity under which the Claimants justify their going into St. Nichola Mole, is sustained by the proofs in the pause.
 

 It is not denied that a real capture and carrying into port by a force not to be resisted, will justify an act which, if voluntary, would be a breach of the laws imposing an embargo. Nor is it denied that if such capture be pretended, if it be made with the consent and connivance of the parties interested, such fraudulent, capture can be no mitigation of the offence. The whole' question, then, to be decided by the Court is a question of" fact. Was this capture real — was the force such a» the Short Staple could not resist? or Was it made in consequence of some secret arrangements between the captor and captured, ?
 

 It is contended, on the part of the United Statep, that the circumstances of this case are such as to outweigh all the positive testimony in the cause, and to prove, in opposition to it, that the Short Staple was carried into St. Nichola Mole, not by force, but with her consent, and by previous! concert between her owners and the captain of the ¡no.
 

 Those circumstances are,
 

 1. The arrival and continuance of the Inb in the port .of Boston, while the Short Staple lay in that-port previous to her departure for Baltimore.,
 

 
 *61
 
 2. Her clearing-out for the Cape of Good Hope while iier real destination was J am'aica.
 

 3. The continuance of the Short Staple in Hampton Roads until the arrival of the Ino.
 

 é.
 
 Her capture on a coasting voyage which would not justify suspicion.
 

 Her being carried to a port where there was a good market, and there given up; and,
 

 6. That the William King, when carried to Jamaica, was also given up without being libelled.
 

 That these circumstances are some of them such as to justify strong suspicion, and such as to require clear explanatory evidence to do away their influence, is unquestionable. But the Court cannot admit that any or all of them together amount to such conclusive.evidence as to render it impossible to sustain the defence.
 

 That the Ino should 'arrive in the port of Boston while the Short Staple lay in that port is nothing remarkable. It furnished an opportunity of concerting any future plan of operations with the owners of the Short Staple, or of any other vessel; but is certainly no proof of such concert. There is no evidence that the respective owners were acquainted or had any communication with each other; and the whole.testimony is positive that no such communication took place.
 

 That the Ino should have cleared out for the Cape.of Good Hope, when her real destination was Jamaica, is sufficiently accounted for. It enabled her to take on hoard a considerable quantity of provisions, an article in demand in Jamaica, which she Would not have been permitted to do had her real destination been known. This may be a fraud in the Ino, hut cannot affect the Short Staple.
 

 That the Ino should have arrived in Hampton Roads while the. Short Staple remained there, and should have followed her to sea, and have captured her, are unquestionably circumstances which justify strong suspicion,
 
 *62
 
 and which would be sufficient for the condemnation of the vessel, if not satisfactorily explained: but it is not conceded by the Court that they admit of no explanation. These circumstances are not absolutely incompatible with innocence.
 

 It is proved by testimpny to which there is no exception, and which no attempt lias been made to discredit, that the Short Staple was absolutely wind-bound the whole time she remained in Hampton Roads
 
 ;
 
 and that she attempted to put to sea before the arrivalbf the Ino, but could not. Had. this capture ever been pre-concerted in Boston, the Ino and Short Staple would more probably have contrived to irieet on the return voyage of the latter, than to have adopted the course of the one waiting in port for the arrival of the other, and then sailing out almost together.
 

 ■ '.The arrival of the Ino in Hampton Roads is completely accounted for. She had suffered by the perils of the sea, and put in ir necessary repairs. This fact is proved positively, and no opposing testimony is produced.
 

 That the Ino should have pursued the Short Staple on a coasting voyage, and have captured her, was a wrong not to be justified. It,is said to. have been so atrocious a
 
 tort,
 
 that its reality, is incredible. The fact, however, is completely proved. The master of the Short Staple swears that he Was on his voyage to Bostón/ that his intention was to proceed to that port; that he had had no previous communication with the Ino, and had no expectation of being captured by her, or of béirig turned out of his course. The other persons on board the Short Staple testify to the same facts, as far as their knowledge extends. The owner of the Inó, who was on board, and her officers, swear that they had. no previous communication with t]ie Short Staple or her owner; that there was no concert of any sort between
 
 them;
 
 that they were informed by some person on shore, while the Ino lay in Hampton Roads for repairs, that the Short Staple and the William Ring were on a vovage to a French island$ that expecting to find something which would .justify condemnation apprize, they determined to examine'those vessels, and,
 
 *63
 
 although, oii examination, they found npthing to justify capture, they still hoped that something would appear in future; and that, at the worst, they should incur no risk of damages, because they should carry the vessels and cargoes to a good'market. In this confidence, they determined to take them to Jamaica.
 

 This disposition in the captors, however indefensible, is very probable. It grew, out of the state of the two countries ,• and no individual who was captured in consequence of it oiight, if his own conduct contributed in no. degree to that capture, to be made the victim of it.
 

 That she was earned into St. Nichola Mole, and there given up to the government of the place, is, in itself, a circumstance throwing some suspicion on the transaction, and requiring explanation. The testimony explains it. The Ino was separated from her two prizes by a fact which .is fully proved, and which sufficiently accounts for that separation. That her captain should, when about to leave them, appoint somfc near port as the place of meeting again, was almost of course; and that he should have relinquished one of the vessels to the government.of the place ceases to be matter of much surprize when it is recollected that he could not have much expectation of making her a prize," that, in fact, the capture was made with scarcely any hope of condemnation, but with a certainty that it,would produce some additional supply of provisions, and could injure no person. The criminalty of this mode of thinking, whatever it might be, was not imputable to the owners of the Short Staple.
 

 It has been contended that, during the. separation. of the Ino from the captured vessels, a- rescue ought to. have been attempted. There, having been, during that period, but three persons belonging to the Ino on board the Short Staple, they might have been overpowered by the American crew $ but the attempt to take the vessel from them was. no part of the duty of tiie Americans, and might,, in the event of re capture, have, exposed the vessel and cargo to the danger of condemnation^ of which, without such rescue., they incurred no hazard.
 

 The abandonment of the William King without' li-
 

 
 *64
 
 belling her, is the natural consequence ot having been able to find no Circumstances of suspicion which might tempt the captors to proceed against her. It undoubtedly proves, what the captain of the Ino avows, that be acted under a full conviction of being exposed to no by the capture, though he should reap no advantage from it.
 

 The interest which coasting* vessels had in fictitious or concerted captures, undoubtedly subjects all cáptures to a rigid scrutiny, and exposes them to much suspicion. Tho case of the Claimant ought to he completely Blade out. No exculpatory testimony, the existence of which is to be supposed from tlie nature of the. transaction, ought to' be omitted. The abse’uce of such testimony, if not fully accounted for, would make an impression extremely unfavorable to the claim. Cut where tho testimony is full, complete' and
 
 concurrent;
 
 where every circumstance is explained and accounted for in a reasonable manner j where the testimony to the innocence of the owners and crew of the vessel is positive, proceeding from every person who can be supposed to have any knowledge of the facts, and contradicted by
 
 none;
 
 the- Court cannot. pronounce against it. This would be to allow to suspicious circumstances a controling influence'to which they are not entitled.
 

 The sentence of the Circuit Court condemning the Short Staple, is reversed and annulled, and the cause remanded to that Court with directions to decree a restoration of the vessel to the Claimants,' and to dismiss the libel.
 

 Story,
 
 J.
 

 stated'that he dissented from the opinion of the Court and adhered to the opinion which ,hé gave in the Court below, in which he had the concurrence of one his of bretheren.